Good morning and may it please the Court. My name is Kenneth O'Rourke for the Appellant, APEX Digital. With the Court's permission, I would ask to reserve about eight minutes for rebuttal time. No reasonable reading of the parties form selection clause in this contract justifies two arbitrations of the same dispute in front of different arbitrators in different cities at the same time. No one entering into the arbitration agreement, the parties signed here, which specifies the form of where the arbitration would take place, would reasonably expect to find themselves before different arbitrators in different cities at the same time on the very same dispute. Rather, APEX clearly and unequivocally in its contract set forth the form selection mechanism, and it agreed with China Metals that APEX would have the choice of form if it filed for arbitration first. The contract specifically says that. The contract also incorporates or refers to the rules of the CTEC body. Rule 12 of that body provides that the first choice of form selection shall be final. And Rule 35, Article 35, it hasn't received the same attention in the briefing, but it, too, says where the parties have agreed on the place of arbitration, the case shall be arbitrated in that place. The parties agreed that the claimant had the choice of form. APEX was the claimant. It filed first, and it chose Shanghai. Now, given that I'm not, yes. That makes all makes perfect sense when I run that through the filter of the U.S. system and most of the arbitral rules that we're all familiar with and our importation of the civil rules often into arbitration, which is sort of the compulsory counterclaim and all that. So I read all that, and it makes perfect sense to me that you don't want to be in two places for something arising out of the same contract. However, why is it here we've – why should we look any further than to the CTEC's opinion that this filing of the counterclaims in Beijing was acceptable? I mean, to me it might not be, but then I didn't sign up to the CTEC arbitration rules, you know. And so if you put it in their authority and then they make a ruling, how could this court overturn that? Because the parties here in their contracts specifically agreed that the first person or the first claimant to file shall have the choice of forum, and that is set forth. It's quite clear in the contract. And in case of any dispute. And it goes on. Then it refers to the rules, and it says if there's a dispute that CTEC has – gets to decide. Right. The question here is whether there was even an issue for CTEC to decide. The parties agreed on the mechanism. And the only possible dispute here when China Metals filed its copycat arbitration was who filed first, because China Metals made this argument that you're supposed to look at the date the arbitrator sent out a notice as opposed to the date of filing. Counsel, the district court said that the filing in Beijing actually covered some aspects that were not covered in the filing in Shanghai. So it wasn't clear that there was precise one-to-one correspondence between the two matters. Your Honor, with all due respect. CTEC then finds that they didn't have to file a counterclaim, that what was filed in Beijing wasn't necessarily a counterclaim to the Shanghai. With all due respect, I believe the district court found it the other way around. Namely, the Shanghai proceeding that Apex filed included nine purchase orders and three types of products. The claim that was later filed by China Metals included eight of those nine contracts and two of those products. So the claim filed by China Metals was a subset, an exact subset. It was not broader in any respect. And I don't believe the district court found that. In fact, he recites in a footnote the contract numbers, and we've repeated them in our dispute, the dispute being how much is owed under those purchase orders. And China Metal, in its own claim, raised just eight of those. So there was a one-to-one correlation, the only difference being that our claim was slightly broader than the China Metals claim. And under that circumstance, we see that you don't get that there was nothing for CTEC to decide after it decided, at most, who filed first. And us, Apex, having filed first under the party's contract, it was very clear that we had the choice of forum. And to read, to get into the analysis of the counterclaim, there's an interesting point I'd like to raise there. The parties do refer to the CTEC rules. The rules specifically cover counterclaims. It has mandatory language in there. It says, the respondent shall file the counterclaim within 90 days. And I'd like to provide a citation for that. That is CTEC Rule 18. It goes on to talk about the content of the counterclaim and the timing, as I mentioned, and things of that nature. Nowhere in the rules does it say that you can elect to not file your counterclaim and start a new action. What the district court referred to was a declaration from a vice chairman of CTEC. That was a declaration submitted in reply. We didn't have the opportunity to comment on it. But what's very interesting about that declaration is the vice chairman mentions no rule, no case law, no opinion, not even a single case example of where that has ever happened in CTEC's history. He just opines without any substantiation for it. And how can that now? Here's really the difficulty I have, is that if we could do this ourselves, everything you say makes perfect sense. But what the district court was saying is that the CTEC actually considered exactly your argument, and that is whether the Venn diagram, if you will, of the filing over here and whether it needed to be merged. And CTEC, presumably interpreting their own rules in a way that doesn't 100 percent make sense to me, okay, but then we're not experts in Chinese law. They basically said it's okay to file in Beijing when there's this already first filed arbitration in Shanghai. So under the contract, you would we would have to basically say they're wrong, wouldn't we? What we were asking, Your Honor, is that the court follow the party's contract because the New York Convention does pose that on this panel. So look at the contract of the parties and see if its arbitration clause was followed. The clause we submit is only subject to one interpretation on forum selection, and that is who filed first, and then you pick, they get to pick the forum. And so you can't But except that's true, except to the extent you have to interpret what claimant means. In other words, the first choice should be final. It says the claimant. Well, when you have two claimants and you have this not 100 percent correlation on all the claims, at least CTEK says, isn't that what CTEK is supposed to do is to resolve that dispute as to who is first to file or how the claimant is interpreted? If there was a legitimate dispute, I would agree with Your Honor. But here what we're saying is there was no Let's just stop right there. So what you're saying is that if there were a legitimate dispute, then we would defer to CTEK, but you don't think that CTEK had a legitimate dispute to consider. May I? Under the New York Convention, the Court has the de novo review of the contract and whether it was followed. In performing that review, what we're suggesting is the Court should look at the contract. It's, to us, very clear on form selection. If the party, if there was a dispute over where the arbitration should take place and it was a legitimate dispute, a reasonable dispute, and the Court doesn't want to second-guess CTEK, it can look and take guidance from CTEK, although this Court does have the de novo review responsibility. But here what we're saying is the language in the contract itself, there were only six written terms, and one of those terms was very specific as to the arbitration forum. There was really no dispute for CTEK to decide after it decided who filed first. And so we think that's where the analysis stops, because this Court's responsibility is to enforce or see if the party's contract was enforced or was it followed. And what we're saying is it was not followed because there was this manufactured dispute that then led to where we are today with two arbitrations of the same dispute. And on the same dispute, even the CTEK administrators, when they recited the contract numbers, it's very clear that we have nine, they have eight of those nine. So it is a subset. It's not broader in any dimension. They've not articulated that it's any different. They just said they are not the same. Kennedy. Let's refresh my memory. What's the status of the second arbitration? Recently, the Shanghai panel has come down with a decision awarding AIPACs approximately $7.5 million. And we think, in fact, that one of the concerns, of course, about two arbitrations simultaneously is the risk of inconsistent decisions. We've had that here because the Beijing panel awarded interest. It was their discretion to award interest. They did, and they imposed over $1 million of interest on AIPACs. The Shanghai panel, by contrast, did not award interest. So had the whole dispute been before the Shanghai panel, we can presume that they would have applied an equal rule or equal finding to both disputes, and they would not have awarded interest, and that would have saved AIPACs, in this case, a significant amount of money. We don't know that for sure, of course, but we do have the fact that the two different panels came out different on the question of prejudgment interest. And these are the kinds of risks when you have, of course, parallel arbitrations of the very same dispute. And we don't think the parties, when they entered into this contract and were so specific as to put that choice of provision in there, that they would ever have believed they would find themselves in this situation. AIPAC is a U.S. company doing business in China. It, of course, wants some power to control where its disputes are heard if it later has to be in arbitration against a State-owned Chinese company whose backyard is Beijing. AIPACs did not want to be in Beijing. It gave itself the mechanism to escape Beijing by filing first under the contract. That's what it did. And, therefore, there was nothing for CTEC to decide to overrule the parties. It didn't have that. I don't want to be a broken record, but I got to, you know, this is one of these things where this is always the crapshoot you end up with when you have to put in a foreign arbitration body, unfortunately. But going back to trying to read this literally as you want us to do, in deciding on where the case should be arbitrated, the first choice should be final. And then it says if there's a dispute, you go to the arbitration commission. Are you saying that isn't there a dispute, though, over whether each person could have been in Beijing? Is the question of interpretation? The contract, of course, is an expression of the party's intent at the time they entered into the contract. And here, what we're saying is there's no reasonable belief that the parties could have had that they would expect to find themselves on the same dispute in two places simultaneously in front of different, because they wouldn't have put an arbitration provision that specifically said the location. And with all due respect, the reading that's advanced by China Metal removes that language from the contract, the part where it says you have the three choices at the claimant's option. They remove that part of the sentence to simply say the parties agreed to arbitrate under CTEK rules. And what we're saying is you can't remove that language when there's only six provisions in this two-page contract, which is then repeated nine times in other contracts. You can't remove that language. You need to give meaning to the party's language, because it's in there for a reason. Well, isn't the --" Now we're focusing on the wrong thing, and that is, if you go back to that language, what you're focusing on is the claimant, the word claimant, and then it says you can pick these little subplaces to have your arbitration. Do you think it's within this Court's authority to make a determination as to who's a claimant under the contract? It's within this Court's authority to interpret the contract and see if it was followed. And what the parties have reasonably intended when they entered into their contract and put in that choice-of-law provision, that a claimant means both sides so that it would remove the force and the teeth of the Form Selection Clause, because what it would basically say is either party can bring its claims wherever it wants. And they didn't say that. They were very specific as to say the claimant gets to select the form. And to read it as to the form selection clause, it would say, well, we have two claimants here. You say the goods are defective. We say you didn't pay us. Because you're the claimant. And the defense of the claim is because the defense to the nonpayment is the defective goods. I understand. And if this was a situation where there was a patent infringement dispute and an antitrust counterclaim and it was complicated, it may be a different situation. But here what we're saying is it's a 100 percent overlap. China Metals claim is a 100 percent subset of the Apex claim. And in that case, there's no dispute. Mr. O'Rourke, in the Title IX, Section 207 gives us the power to confirm the award unless we find one of the specified grounds in the convention. The convention in Article V says that recognition and enforcement of the award may be refused if we find one of the specified grounds, one of which is that the rules that the parties agreed to were not the composition of the panel and so forth was not in accordance with law. What does that word may do for us? If we're told that the recognition of the award may be refused, doesn't that also suggest that recognition of the award may not be refused? It does use the word may, Your Honor. I'm not aware of the authorities in this circuit or, in fact, other circuits interpreting that. If that's true, then why doesn't that make this a matter of why doesn't that suggest that if the award is correct, then we shall confirm it? If we think it's incorrect, then we may refuse to enforce it. And why doesn't that make this whole thing then within the discretion of the district court and put us in the role of deciding this on the basis of abuse of discretion? Because I don't believe that the statute gives the district court or any court the discretion to decide if the award was correct or incorrect. That would require looking at the merits. And I think the statute doesn't. Well, you've asked us to do that on the basis of a procedural judgment. You've asked us to act as sort of a super court here to overrule CTAC on interpretation of its own rules. Well, Your Honor, with all respect, we're not – I'm not asking for you to interpret  What I'm saying is interpret the contract. And when you interpret the contract, you reach – you look at who filed first, CTAC decided that, and you know that. This goes to Judge McKeown's question about whether the contract includes CTAC's interpretation of its own rules. Yes. And so there's a little bit of a chicken-and-an-egg problem there as to whether we're going to interpret the rules for ourselves or whether we're going to let CTAC have some role in that. I agree, except for there's one thing that makes this different, and that is in the case that the court is to interpret the contract, if the parties specifically put in that form selection clause, if that language wasn't there, this could – this would be a different case. But the parties specifically put it in, so when you read the contract, it says claimant has the choice of these three slides. But you're saying it wouldn't have any – it basically wouldn't have any meaning. It would have no – If we were to adopt the other position. Correct. That language is given no meaning. And here the parties were so specific as to put that in, and you can imagine why, because we have a – you know, you don't want to litigate on the other sides, a State-owned company's backyard. Now, my question is still, why isn't our role under Section Article V of the Convention that we may or may not refuse to enforce that, depending on whether the – on how the arbitration proceeded? And as long as the question is may, then the question for us as a court of appeals is one of abuse of discretion on the part of the district court. The parties have agreed that it's a de novo review here. It's a question of law, of whether the contract was followed. So I don't think – there's not a factual issue that the district court made that were challenging. No, but that would be a whole different – that would be a whole different  But we can decide – but a district court may decide to issue relief, and that we might review for abuse of discretion, which would be different from overruling it on factual findings. Okay. Well, then I apologize, Your Honor, but I just see it as an issue of law that was raised in the district court. That's the issue that the Criteral presents. The district court might agree with you completely. The district court might say, Judge McKeon has got this exactly right. We don't understand what CTAC is doing. But in the – but in the – but in my discretion, I'm going to deny enforcement here, because I think that there's reasons of comedy that I should respect CTAC, even as I disagree with CTAC. I think that maybe the parties have – that maybe Apex has been done an injustice here, but in the interest of good relations, I'm going to deny that, in which case our review would only be for abuse of discretion. All I can say is the district court did not engage in that analysis in the opinion, and I have nothing more to add other than it's just the – it's a de novo review, and I have nothing more to add on that point, Your Honor. All right. Thank you. Okay. Thank you. May it please the Court. Jeffrey Gordon for the appellee. First, in response to counsel's comment, this is not a subset. A factual finding was made by CTAC, which is the exact body that the courts – that the parties said should make this finding, that there were different contracts, that there were different products, and very significantly, that there was a different claim. In fact, when they issued the award that's before the Court today of over $10 million, that was for a dispute that was not contained in the Shanghai arbitration. It was for a product that was – no one claimed was defective and which Apex just refused to pay. So when they issued that opinion, they very clearly said, and it's not been challenged, that this is for a product that there's no dispute about, that was sent to Apex, that Apex sold to stores that people bought, and Apex just kept the money and has refused to pay. So it is – the arbitrations have significant differences. It was a factual finding that was put before a CTAC, which CPEC decided. CPEC decided that there were two claimants and there were two claims, and interpreted this language and interpreted their own agreements to allow this. In fact, in the United States, this does occur. And it's – there are cases filed in different State courts, in Federal court and State court. There's the Colorado River Doctrine. There are all of these procedures to try to deal with it, but frequently in the United States, cases will go forward in two different courts because the courts don't merge them if they're in one State or another State for – under their discretion. So this is not totally unique.  So let me ask you this. We've been looking at this as – I think the briefs certainly briefed it as an all-or-nothing proposition. In other words, Apex wants us to basically say that the clause wasn't upheld and therefore we should tip it. You want us to say that everything that CTAC did was appropriate and we should leave things as is. Is there a potential middle ground here where our interpretation of the contract would be that the claimant, to the extent that the claim involved defective product, that there was a first-to-file and that that can't be changed by CTAC, but then that there may be other claims which you have to defer to CTAC on, you know, first-to-file on those? I think that that would be a difficult thing for the Court to do and really would be intrusive in the process and implicate the process in ways. What Apex has said in their brief, by the way, is that if they're successful here, they plan to go back to CTAC and say that CNMPC has waived its claims because it wasn't brought as a counterclaim and can't collect. That is, they're going to be able to, they say, keep, this is on page 25 or 24 of their opening brief, they want to keep this $10 million or over $10 million and that they would never. But no offset? Because there would be no counterclaim in that arbitration? Is that the theory? Exactly. And that we've waived it and it's all over. And they want to have a gross and fairness, which goes to one of the factors that may, which has been interpreted to give the Court discretion, even if there is a violation. So are we reviewing the district court's judgment here on abuse of discretion or on a de novo standard? No court, to my knowledge, has said that it is an abuse of discretion standard. However, I think that in essence, to the extent that the district court exercised its discretion and when it talked about no prejudice, that is the way that it has been used in the Fifth Circuit, the prejudice issue. And the district court, the Fifth Circuit in their recent opinion said that the word may is involved and that because of the great discretion shown to foreign arbitral wards that they're given a great deference. Let's suppose that we thought that CTAC was wrong here. Now, what do we do with the prejudice question? Well, I think you'd look at if there's been an argument in the record, not the argument that was just made, there's been no prejudice shown and that's what the district court found. China Metal and Apex got an arbitration. They got an arbitration before a properly constituted panel in China. It was just a venue problem. The panel was constituted in Beijing instead of Shanghai. And therefore, we should affirm it because there's no – even if there was a – even if there was a mistake made here, there's no prejudice here, no evidence of harm. Right. Because the mistake would be a procedural mistake at best that – and this is in one of the decisions that was cited here. The two factors would then play into – come into play. One, does the country in which the arbitration was held have a strong public policy to enforce arbitration? Yes, it does. That's in the record, the Faye Declaration and the Shen Declaration. Secondly, is it procedural at best? One of the interesting things in relation to that is a declaration that they put in of a Mr. Norton who is a lawyer for Apex. And at 329 of the record, he says that the Shanghai and the Beijing parts of CTEC are part of one organization, applying the same rules and having the same body of arbitration. So what you have here is, at most, a venue issue of convenience. There's no double counting. The Beijing and the courts so found below, the panel in Beijing very carefully just awarded this award based upon what was not in dispute in Shanghai. Now the Shanghai panel has issued its award, which is less than they were seeking. That will go back to Beijing and Beijing will issue the award for the difference because what the panel said in Shanghai is we want this to be an offset on what's remaining. What about the difference? Two different panels, one awarding interest, one not awarding interest. Well, interest was money that we had had owed to us. The defect, the money that they get for that was money they have not yet paid and that we don't have to pay them. That's an offset on what they owe us. So there's a perfect consistency with it. I don't know if that's clear because I know the records aren't clear. I don't know the Chinese rules as to whether, for example, something that's not a fixed amount like we have here, whether they adopt the same interest rules or not, or whether interest was available on the defective product case. Right. There's nothing in the record on that. But it's clear that there's no counterclaim rule. The rule that he cited said you can file a counterclaim if any in that body, but the declarations that are in the record that are unopposed is that they don't have a compulsory counterclaim rule and you can file in two. And in the arbitration provision, claimants is capitalized with a C. It is a term of art. And on each of these things there are two claimants. We have that occur here in the United States. It is not something that goes to due process. It's something that goes to what the rules are. But very specifically what the parties set forth here is a procedure to resolve this. And in the cases that they have cited, like Cargill Rice or Shoes or Western Employees, that was where a panel or an arbitral body specifically rejected the agreement. So in Western Employees, Employers, which is a Ninth Circuit case, the panel said we're not going to issue findings of fact, even though you've asked for it, because we're just not going to do it because that's not our rules. In Cargill Rice, they said we're not going to allow you to choose the arbitrators because our rule is we're going to choose them. And in Shoes, the Eleventh Circuit, they said that you had to have at least three. No, we're going to have two. They specifically rejected it. We have a case here where the parties contracted for, if there was a dispute, to have it interpreted under the rules of the body. And that's exactly what happened here. And the district court, by the way, did review it. It did two things. One, it said you contracted to have CTEC do it. And CTEC did do it after extensive review, after a lot of briefing. And every opinion in this case, as the Court's aware, is multi-page written opinions. A Chinese court interpreting the law upheld this in a written opinion. All of this was thought out. But the district court didn't just do that, because there's extensive record below which it referred to, the Fay Declaration. Justice Fay was a justice of the Supreme Court of China. In the subdivision, they organized the Supreme Court by divisions, dealing with foreign arbitral awards. And a CTEC official, he said this is the way it's done. And that he, while he didn't cite particular cases, he said there have been other cases that have come up where people are allowed to file, instead of a counterclaim, they're allowed to file in another jurisdiction. That's the way they have interpreted the word claimants. The words are still there. They filed as a claimant, and they got that heard in Shanghai. It was not transferred to another jurisdiction. It was not merged with another one. It was filed in Shanghai at their option, and it was heard there. We had a different claim, though related, that was filed and heard in Beijing. We were the claimant in that. That's a reasonable interpretation, which the record shows, which was admitted without objection. There was no objection to these declarations. They were leading people in China, and they said that this is the way it's done in numerous cases there. No one came in from their side saying, no, it's never been done. We disagree with that. We want to do that. It was done in a reply brief. He said, but before this, in this case, we have filed six or seven briefs after reply brief. No one has been shy in bringing in evidence. It was never done. Kagan. Let me ask you as a practical matter, because you sound pretty eloquent and logical, but what does this first choice mean, then? When would you ever have a first choice dispute if you could always file a different claim or a claim wherever else you wanted and everybody could be a claimant? What it means, my understanding of what the interpretation of CTAC is to this, and the Chinese courts upholding that, is that when you file, that's where it stays. So Apex filed in Shanghai, and it was not transferred anywhere else. It was not merged with anything in another place. They had their claim heard there. In – and this, by the way, is in – it doesn't – that first choice doesn't appear in the arbitration provision. That appears in CTAC's own rules. If anything, they are – I've never seen a court anywhere in the United States ever challenge an interpretation of an arbitral body's, foreign arbitral body's rules under the Convention and say you're interpreting it wrongly. First choice is final. So they got it heard where they – it wasn't transferred. We're in Beijing. We could have argued that it should go to Beijing, and, you know, that's where witnesses – that's where lawyers are. That isn't done. This is where they filed it. They're the claimant. And that's what the agreement means. And in the paragraph before that notice, well – And if we're looking at this under the Convention and seeing whether there's a proper defense, would we go so far as to even look at Article 12, or would we stick to the face of the arbitration agreement? Well, if you stick to the face of the arbitration agreement, it is very interesting. A claimant's option with a capital C in accordance with the commission arbitration rules. So it incorporates the rules, in your view? Yeah. Oh, yes. And in the Chi-Mei case, the Jersey Third Circuit, I think, they very specifically said there that when you incorporate the arbitration rules, and the arbitration rule says the arbitrated body decides, then that means that you're agreeing that that should be decided by the arbitration body. In Chi-Mei, the court, though, said, wait a second. The dispute here is, was the agreement forged? And therefore, did they ever agree to this provision? And that we're going to definitely look at anew, because arbitrability in that situation should be reviewed, because if they didn't agree to that provision, then you can't have that other body do it. But if they – if that hadn't been the issue, then it's appropriate to look to the party's agreement that the meaning of that phrase shall be determined by the commission in – under their rules. That's very specific. Claimant is capitalized. There's a factual finding that there's two things. The procedure went forward. It was a unanimous decision. This has been reviewed extensively in CTAC, re-reviewed. The arbitral body, including their own arbitrator, unanimous opinions, no dissents here, went to the Chinese Intermediary People's Court, 3-0, saying this is who decides this. And in that opinion, they reviewed all the arguments that are being made here. And they said, no, those arguments under Chinese law, which is the law of the primary – it's a primary law that gets applied in this case on procedural issues. The Supreme Court has held that. And that's the primary law that impacts this is the law of China. They went into the district court and said, don't rule, don't rule, because we just filed in China. They filed in China the day before they filed their opposition brief to our thing. And we said, no, the Chinese court's not going to do it. Everyone back and forth. Anyway, the district court, you know, in its wisdom, just delayed until the Chinese court ruled, and the Chinese court threw it out and said, no. And it was a long opinion. And it was a reasoned opinion. But there has been – parties contracted for an arbitration before CTEC. They got that. They contracted that any dispute on this thing would be decided by CTEC. They got that. The decisions were unanimous. They were fair. They took into account each arbitration. I mean, the bodies did exactly what you would want them to do. Kagan. But that doesn't – that shouldn't figure into our decision, should it? Well, I think it figures into Your Honor's comment about may. And about – because that's clearly what it says, it may. And there are opinions that discuss the word may. Do you know of any circuit court opinions that have imposed an abuse of discretion standard instead of a de novo? No. Okay. But I believe that the essence of that is the same, that is, there is discretion at the district court level and there is discretion here. And the de novo standard has never been applied to the discretion standard. So I think that the – that issue is a – is an open one. I'm not aware of any court saying that de novo applies in that situation. And I'm not aware that they're saying that abuse of discretion. So – because the – the Karaha bonus opinion, which we presented to the court after the close of briefing because we had argued the district court opinion and then the court in the Fifth Circuit just came down with an opinion affirming that saying that, you know, pointing out that there was no prejudice and talking about the great reluctance to set aside arbitral awards under the Convention, the pro-enforcement bias, and especially based upon a procedural violation, at most. They said assume there was a procedural violation. So assuming that the venue should have been different. That's all they're talking about. It's still CTEK, still CTEK rules, still all of this. And the parties said in that contract, we're going to arbitrate this under CTEK. Assuming that, at most, you have a venue thing, to then have this whole long process thrown out, to have this Court step in and reinterpret these things after it's been interpreted over and over again and by the very body that they – that they said, and then to have this great injustice that Apex boldly argues that they should be able to keep this money. That is, these are DVD players that they sold to stores, and the stores sold. They got paid, and they just didn't pay. And they're not defective. And that's a whole – the defect is that these products – these are products that are not. Talk about why you would have an interruption in international trade and a real concern for all the things that the – that many courts have said are so important in upholding the foreign arbitral awards, to have the result of this that a body could – an American company can get away with not paying on, at most, a technical procedural thing, which I did not – I do not think happened. But at most that – that may be a different standard to review, but it would – but definitely this Court has discretion, even if it found that procedural defect, to – under the May standard, under the discretion to – to uphold the award. I have one second. Thank you very much. Thank you. Your Honors, if China Metal had brought its case in Shanghai, where we believe it was contractually obligated to do, this case may have been decided by CTEC some time ago. We don't know that for sure. But it was China Metal that decided to go around the parties. Counsel, if this case had been decided in Shanghai, do you have any evidence that it would have come out any differently than the way it came out in Beijing? No. It's on the interest point. I don't have evidence, Your Honor. I have argument that because they decided – Shanghai decided the interest question in a way that is different than Beijing, we're being forced to pay interest on amounts that had the panel decided we owe them 10.7, they owe us 7.5, the panel might have said we only owe interest on the difference. Okay. But that only goes to the question of interest, and presumably that you're – you're – I'm trying to get at the point, that prejudice point. What – how – how can you demonstrate that you've been prejudiced even if we think that CTEC has made a bad decision here? Even if CTEC has misinterpreted its own rules. Besides the interest point, Your Honor, we were forced to arbitrate in two places simultaneously, so you have additional – But that would be a burden on the other side as well. Certainly. But under our contract, we agreed where the forum is. We're also – we were deprived of what the Supreme Court has said. I think the prejudice question really ought to go, though, to the – to the bottom line. Do you have any evidence here that – that you really got prejudiced by having to – to litigate this thing in Beijing as opposed to Shanghai? Why isn't that just – why isn't that just a venue question? Because the Supreme Court has said that the choice of forum is a substantive right, and we were deprived of that right. So that's – that is a substantive right that – where we were prejudiced, in addition to the additional cost of – of litigating two forums simultaneously, in addition to the difference in interest. And I can't say for sure how the panel would have settled on that. The question of the substantive right, of course, might be – might – would be interesting if this were a venue case in U.S. courts, but it's not. Right. What the – what the parties – and the Western Employer case, the Cargill case, the Eleventh Circuit case, in each of those cases, nobody could show prejudice from the type that I believe the – the Court is asking about. Would the panel have ruled differently? In fact, in Western Employer, the Ninth Circuit case, the arbitrator made a decision, X dollars. He didn't issue findings of fact. If he had issued findings of fact, it still would have been X dollars. There was – there was no prejudice whatsoever. Yet the Ninth Circuit said the contract wasn't followed because the parties agreed to a certain procedure that they would get findings of fact. They didn't get them. Therefore, we vacate the award. And we're arguing the same thing here. And the same thing happened in Cargill. They complained that – they objected at the outset of the arbitration that it wasn't being followed according to their contract. They weren't getting to select their arbitrators. They lost in front of the panel. They lost all the way until they got to the Fourth Circuit. And the Fourth Circuit said, Cargill, you're right. You were not given your contractual selection of arbitrations and the arbitrators in the way the contract outlined. So you were deprived of your contractual right. Cargill could not show that those arbitrators they would have selected would have made any different ruling. Yeah. Although selection of arbitrators does go to who's going to judge your matter. The – but here, there's no question – there's no different law being applied in Beijing than would be applied – if we had a venue question in the United States, we had two different states involved in which we had different statutes of limitations or some other substantive rule, that might make a major difference even within the United States. But I'm looking for any evidence that you can show that we had a different law applied in Shanghai than we would have had – or a different law applied in Beijing than we would have in Shanghai. The substantive law was a U.N. convention about the international sales of goods and so forth. I don't – I can't give the Court the cite to it. But that's the substantive law that applies to the dispute. The law presumably is the same whether it's in Beijing, CTEC, or whether it's in Shanghai, CTEC. The law should be the same. Okay. Is it clear that you got different personnel in Beijing than you would have in Shanghai? Would you have had different arbitrators? We did have – we, in fact, have different arbitrators. And the CTEC commission appointed a different lead arbitrator for those two panels. So we have different arbitrators. Were they appointed from a central place? Were the arbitrators – did you know going into – when you selected Shanghai, did you have an idea as to who the arbitrators were going to be assigned to Shanghai? CTEC has a very long list of potential arbitrators. Apex chose somebody on that list. China Metals chose somebody on that list. The commission appointed the third and presiding arbitrator. Is that the same list that would have applied to Beijing? I don't know the answer to that, Your Honor. So we don't know that you got any different personnel than you would have if all of this had proceeded in Shanghai. Well, we, in fact, have different personnel. I understand that you do, in fact. But we were appointing from the same list. It was because you had two different proceedings. And so we presumably appointed different people because you had two different proceedings going on. And the commission appointed a different presiding arbitrator in the two different proceedings. But they should have been working from the same list. Like I said, I just don't happen to know the answer if the Shanghai list is the same as the Beijing list. And whether there's some overlap, I don't know. Going back to a question that Your Honor asked about the contract and the claimant's option, it only gets to CTEC in the case of a dispute. And so that's when that language comes in. And we don't think when you read the party's contract there was a dispute under the contract. And also, just to the other readings urged by them is that you can file the very same arbitration as a — in a different city than the one you contractually agreed to abide by. So it really removes the meaning of the party's contract term. And just one last response. I'm not aware of a court, a circuit court or district court that has applied an abusive discretion standard to this provision of the New York Convention. The authority seems to be uniform that it's a de novo review. Thank you, Your Honor. Thank you very much. Thank you very much to both counsel. The matter will stand submitted. And we'll come to Hector Camarena versus Slade. Thank you.
judges: Pregerson, McKeown,bybee